# In the United States Court of Federal Claims

**OFFICE OF SPECIAL MASTERS**
**No. 23-1873V**
UNPUBLISHED

| | |
|---|---|
| EMAN HEGAZY,<br><br>Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND HUMAN SERVICES,<br><br>Respondent. | Chief Special Master Corcoran<br><br>Filed: August 27, 2026 |

*Kathleen Margaret Loucks, Siri & Glimstad LLP, Minneapolis, MN, for Petitioner.*

*Adam Nemeth Muffett, U.S. Department of Justice, Washington, DC, for Respondent.*

**RULING ON ENTITLEMENT**[1]

On October 24, 2023, Eman Hegazy filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that she suffered a shoulder injury related to vaccine administration ("SIRVA") as a result of an influenza ("flu") vaccine administered on November 30, 2021. Petition at 1.

For the reasons set forth below, I find Petitioner has established that she suffered the residual effects of her injury for more than six months, and that all other Table element are met. Petitioner is entitled to an award of compensation.

[1] In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2018).

## I. Procedural History

On October 10, 2024, Respondent filed Rule 4(c) Report opposing compensation, arguing that Petitioner cannot meet the Vaccine Act's "severity" requirement or the requirements of a Table claim. Respondent's Rule 4(c) Report ("Report"), ECF No. 27. On January 29, 2025, Petitioner was ordered to file a Motion for Ruling on the Record. After some delay to gather records, Petitioner filed the Motion that June. Motion for a Ruling on the Record ("Mot."), ECF No. 36. Respondent filed an opposition brief on August 13, 2025. Response to Petitioner's Motion for Ruling on the Record ("Resp."), ECF No. 38. Petitioner filed a reply on August 29, 2025. Petitioner's Reply Brief ("Reply"), ECF No. 43.

## II. Factual Background

On November 30, 2021, Petitioner received flu and Covid vaccines, both in her left arm. Ex. 1 at 4-5.

Several weeks later (December 18, 2021), Petitioner went to an emergency department complaining of upper left arm pain radiating to her neck, trapezius, armpit, left chest, and rib cage. Ex. 4 at 560, 562.[3] She stated that she began to experience left arm pain after receiving her vaccines. *Id.* Further, she stated that her pain was "constant for about a week and got a little better," before worsening four days prior to her visit. *Id.* Petitioner had active range of motion that was limited due to pain, but a full passive range of motion. *Id.* at 562. The treating physician "suspected [Petitioner] had some type of injection complication such as vaccine being injected into the bursa." *Id.* at 563.

On December 28, 2021, Petitioner sought clarification on the orthopedic follow-up, and specifically whether the clinic would process Emergency Medical Assistance ("EMA"). Petitioner also stated that her pain was persistent, and that she needed to have a follow-up at the clinic. *Id.*

On January 12, 2022, Petitioner saw Dr. Jennifer Suzanne, a sports medicine specialist. Ex. 4 at 654. She reported intermittent pain in her shoulder, rated as "5/10", and weakness but denied decreased range of motion. *Id.* An examination showed signs of impingement but a normal passive range of motion. Petitioner was diagnosed with left shoulder bursitis and impingement signs. *Id.* at 655. She was then referred to physical therapy ("PT"). *Id.* at 655.

[3] That same day a VAERS report was filed. Ex. 6.

Petitioner began PT on January 14, 2022. Ex. 4 at 678. Examination showed reduced range of motion, positive impingement signs, and slightly reduced strength. *Id.* at 678-79. She stated she could only sleep a few hours per night, and her pain was described as 0-6 out of 10. Ex. 4 at 678, 681.[4] However, Petitioner exhibited no functional limitations, and one session a week was recommended to improve sleep. *Id.* at 681, 684.

Petitioner attended four PT sessions between January 14 and February 22, 2022. *Id.* at 674-740. By the last session, Petitioner reported her condition was improving and she was "ready for discharge from therapy and continue their home treatment program." Ex. 7 at 715. Her pain was rated as zero, and she reported she only experienced pain "at the most" for thirty minutes in the mornings, but rated it as "6/10 in am. 01/10 rest of the day". *Id.* at 715. The therapist opined that PT intervention was no longer required, and her goals were noted as met. *Id.* at 717. Additionally, Petitioner was authorized for six visits, but only attended four before her discharge. *Id.* at 718.

On March 14, 2022, Petitioner requested additional EMA coverage, and specifically an "extension to cover the physical therapy for SIRVA because of vaccine at Ramsey County Immunization Clinic". Ex. 10 at 4.

Approximately six months later (September 8, 2022), Petitioner was seen at the University of Minnesota Community University Health Care Center ("CUHCC") for stomach and abdominal pain. Ex. 12 at 6-7. There is no reference to shoulder pain in these records. She went to CUHCC again on November 23, 2022, for stomach pain and a cough. Ex. 12 at 4-6. There is no mention of shoulder pain, and the record notes that Petitioner exhibited a full range of motion and full strength. *Id.* at 6.

Petitioner returned to CUHCC for an "immigration physical" in the following year (October 2023). Ex. 12 at 1. There is no mention of shoulder pain and Petitioner was assessed with a healthy history after an examination. *Id.* at 2.

Petitioner then saw sports medicine specialist Dr. Oberstar on May 8, 2024, for "left shoulder pain after receiving vaccines almost 2 years ago." Ex. 7 at 32. She also stated "I follow on my old case of Jan 2022… The pain for SIRVA does not go away. I am hoping to have any sort of imaging like Ultrasound or MRI to see how much damage…" *Id.* at 12. She described intermittent pain, numbness, and tingling in her shoulder, along with weakness in her hands. *Id.* at 33. Petitioner also reported that "[PT] was not helpful with pain relief." *Id.* An examination showed full range of motion and was negative for impingement. *Id.* at 34. X-rays of her spine showed mild degenerative changes. *Id.* at 25.

[4] Petitioner's Shoulder Pain and Disability Index from January 14, 2022 also describes her pain as ranging from 5-9 out of 10. Ex. 4 at 685.

Petitioner was assessed with left shoulder pain, cervical pain, and left lateral knee pain. *Id.* at 32-33.

On May 15, 2024, Petitioner was seen at the Health Fairview Clinic to establish care. Her health issues included colitis, SIRVA symptoms, and knee problems. Ex. 7 at 51. She also received a COVID vaccine in her left arm. Ex. 7 at 57. An MRI on June 8, 2024 showed mild osteoarthritis and a low-grade partial tear of the mid to posterior supraspinatus tendon. Ex. 7 at 155.

Petitioner returned to Dr. Oberstar on June 12, 2024, for left shoulder and knee pain. Ex. 7 at 221. She reported that her left shoulder injury was related to “high delivery of a vaccine.” *Id.* at 226. Dr. Oberstar noted that Petitioner had “only … small amount of bursitis” but the MRI revealed a partial supraspinatus tear in her left shoulder. *Id.* at 224. Petitioner also stated that she “thought that the left shoulder originally had something to do with the high delivery of a vaccine”. *Id.* at 225. She was referred to PT for her knee symptoms. *Id.* at 227.

Petitioner had two additional PT sessions on June 14 and 19, 2024. Ex. 7 at 236-76. See Ex. 7 at 240. There is documentation of a PT evaluation for her knee, but not her shoulder. *Id.* at 241-42. On June 19, 2024, petitioner completed a PT session for her knee and shoulder, and on examination she exhibited reduced ROM and showed impingement signs in her shoulder. *Id.* at 268.

Petitioner had additional medical care in Egypt in 2025, including an MRI on January 21, 2025. Ex. 9 at 1-6; Ex. 8 at 1. The MRI revealed mild osteoarthritic changes to the acromioclavicular and shoulder joint, as well as mild supraspinatus tendinopathy. Ex. 8 at 1.

Petitioner submitted an affidavit and two declarations in support of her petition. Ex. 3; Ex. 17; Ex. 20. She states that her arm pain started within 15 minutes of the November 30, 2021 vaccinations. Ex. 3 at 1-2. Petitioner further described how the pain has affected her life and her course of treatment, commenting on how she experienced pain throughout 2022 and 2023. *Id.* at 5, 6. In her supplemental declaration Petitioner describes her insurance coverage, stating that she was only covered for emergency room visits in 2021 and 2022. Ex. 17 at 1. She was not eligible for Medical Assistance until May of 2024. *Id.* at 2.

In her second supplemental declaration, Petitioner addressed certain aspects of Respondent’s opposition. Ex. 20. She stated that her reports of sleeping well in 2022 were due to the purchase of a new mattress and strategic use of pillows. *Id.* at 1-2.

Further, the immigration check on October 25, 2023 was to check for certain diseases, mental health, and edemas in the extremities. *Id.* at 2. Additionally, the 10-point review of her systems on November 23, 2022 was also to check her extremities for edemas. *Id.* No range of motion tests or strength tests were performed or documented at that time. *Id.*

Lara Merrill, Petitioner's landlord, submitted a declaration in this case. Ex. 13. She stated that Petitioner's husband informed her that she was unable to shovel snow due to her arm in January of 2023. *Id.* at 1. However, Ms. Merrill "cannot recall how this injury/aliment came to be." *Id.,* at 2.

Petitioner's husband, Hazem Hamdan, also submitted a declaration in this case. Ex. 14. He stated that Petitioner's "vaccine incident" was on November 30, 2021 and the "pain was never relieved." *Id.* at 1.

## III. Legal Standard

Before compensation can be awarded under the Vaccine Act, a petitioner must demonstrate, by a preponderance of evidence, all matters required under Section 11(c)(1), including the factual circumstances surrounding her claim. Section 13(a)(1)(A). In making this determination, the special master or court should consider the record as a whole. Section 13(a)(1). Petitioner's allegations must be supported by medical records or by medical opinion. *Id.*

In particular, a petitioner must establish that she suffered an injury meeting the Table criteria (*i.e.* a Table injury), in which case causation is presumed, or an injury shown to be caused-in-fact by the vaccination she received. If a petitioner establishes a Table injury the burden shifts to respondent to establish a more likely alternative cause. Section 13(a)(1)(A), 11(c)(1)(C)(i), 14(a). If a petitioner cannot establish a Table injury, she or she may pursue causation-in-fact under the legal standard set forth in *Althen v. Sec'y of Health & Hum. Servs.*, 418 F. 3d 1274, 1278 (Fed. Cir. 2005).

The most recent version of the Table, which can be found at 42 C.F.R. § 100.3, identifies the vaccines covered under the Program, the corresponding injuries, and the time period in which the particular injuries must occur after vaccination. Section 14(a). Pursuant to the Vaccine Injury Table, a SIRVA is compensable if it manifests within 48 hours of the administration of an influenza vaccine. 42 C.F.R. § 100.3(a)(XIV)(B). A vaccine recipient shall be considered to have suffered SIRVA if such recipient manifests all of the following:

> (i) No history of pain, inflammation or dysfunction of the affected shoulder prior to intramuscular vaccine administration that would explain the alleged signs, symptoms, examination findings, and/or diagnostic studies occurring after vaccine injection;
>
> (ii) Pain occurs within the specified time frame;
>
> (iii) Pain and reduced range of motion are limited to the shoulder in which the intramuscular vaccine was administered; and
>
> (iv) No other condition or abnormality is present that would explain the patient's symptoms (*e.g.* NCS/EMG or clinical evidence of radiculopathy, brachial neuritis, mononeuropathies, or any other neuropathy).

42 C.F.R. § 100.3(c)(10).

In addition to causation, a petitioner must also meet the requirements establishing that the vaccine received is "covered" by the Program, the duration and severity of petitioner's injury, and the lack of other award or settlement.[5]

## IV. Petitioner Meets the Severity Requirement

With regard to severity, a petitioner must show that she suffered the residual effects or complications of her injury or condition for more than six months after the administration of the vaccine. Section 11(c)(1)(D)(i); *see Song v. Sec'y of Health & Hum. Servs.,* 31 Fed. Cl. 61, 65-66 (1994), *aff'd*, 41 F.3d 1520 (Fed. Cir. 2014) (noting that a petitioner must demonstrate the six-month severity requirement by a preponderance of the evidence). Finding that petitioner has met the severity requirement cannot be based on petitioner's word alone, though a special master need not base their finding solely on medical records. Section 13(a)(1); *see Colon v. Sec'y of Health & Hum. Servs.*, 156 Fed. Cl. 534, 541 (2021). Severity must be established regardless of whether the claim arises under the Table or is a causation-in-fact claim.

Petitioner received her vaccine on November 30, 2021, and alleges pain began that same day. To meet the severity requirement, she must establish that she suffered the effects of her injury through May 30, 2022 (six months after onset). The record in this

[5] In summary, a petitioner must establish that she received a vaccine covered by the Program, administered either in the United States and its territories or in another geographical area but qualifying for a limited exception; suffered the residual effects of her injury for more than six months, died from her injury, or underwent a surgical intervention during an inpatient hospitalization; and has not filed a civil suit or collected an award or settlement for her injury. *See* § 11(c)(1)(A)(B)(D)(E).

case establishes initial treatment through February 22, 2022, less than four months post-vaccination. Ex. 7 at 715. Thereafter it is silent on the issue of shoulder pain for over two years – or until May 8, 2024. *Id.* at Ex. 7 at 32. However, there is other evidence suggesting a recurrence (or continuation) of pain had continued. She was authorized for more PT than she received by February 2022, and clearly had not recovered as of that time.

In addition, Petitioner has persuasively established that her treatment was hampered by a lack of medical insurance. When Petitioner initially treated, she had EMA coverage, which she has noted covers emergency medical conditions but not rehabilitation services or chronic treatment. Mot. at 22 (citing ex. 11 at 1-2). It also provides coverage for a six-month period and must be renewed thereafter. *Id.* at 22.[6]

Petitioner had sought to extend the EMA coverage in March 2022, but it does not appear she succeeded. Ex. 10 at 4. There is also the fact that Petitioner started the process to apply for Medicaid (Medical Assistance) in October of 2023, a process that requires a social security number and legal status, which she did not obtain until March of 2024. Mot. at 22. Petitioner did seek treatment in September, October and November 2023 at Community Health for abdominal pain and a required immigration exam. Ex. 12. However, she reasonably claims these expenses were paid out of pocket based on a sliding scale relative to her income. Mot. at 23.

Respondent argues that the Petitioner's injury was largely recovered by February 22, 2022, when she reported her condition was improving and she was ready for discharge. Resp. at 12. However, the record does not support the conclusion that Petitioner's shoulder pain had *resolved* at that time. Instead, she continued to report pain as 6/10 in the mornings. Ex. 7 at 715. Further, Petitioner elected to continue with home exercises at that time, not cease treatment. *Id.* Given the complications with insurance, it is not surprising that Petitioner elected to discontinue formal PT at that time. Additionally, as described above, when she returned to treatment in 2024 she referenced the vaccine injury as the cause of her pain (although the lengthy gap reasonably calls into question whether her SIRVA from three years prior likely explained persistent symptoms that had otherwise not merited treatment for several years).

Respondent also highlights Petitioner's intervening medical encounters, wherein no treatment for shoulder pain was sought, maintaining that they undermine the conclusion that her SIRVA was ongoing. Resp. at 12-13. But these appointments were for specific medical purposes distinguishable from the SIRVA. Two were for stomach

[6] The gaps in coverage resulted in certain bills being overdue. Ex. 10 at 11; Ex. 3 at 4. This further impacted Petitioner's treatment, in particular the access to physical therapy in February of 2022.

pain, intermittent vomiting, and diarrhea. Ex. 12 at 4-7. A third was for a physical in association with her immigration status. Ex. 12 at 1-2. It is not surprising that shoulder pain was not mentioned during these appointments. As noted in *Kirby v. Sec'y of Health & Hum. Servs.*, 997 F.3d 1378, 1383 (Federal Circuit 2021), "a patient having a heart attack is not likely to mention his runny nose, nor is his physician likely to record it." Petitioner's affidavit corroborates the purpose of these intervening appointments. She explained that she has a history of irritable bowel syndrome and colitis. Ex. 3 at 5; Ex. 14 at 5; Ex. 20 at 2. Further, the physical for immigration status and not focused on treating any ongoing problems or obtaining medical care. Ex. 12 at 1-2.

The overall record thus constitutes a sufficient showing of severity to meet the evidentiary standard. Of course, the paucity of treatment and long gap in care speaks to an injury that was notably mild, and therefore this case is not one that will involve a significant award of pain and suffering.

## V. Factual Findings Regarding a Table SIRVA

Review of the entire record reveals that a preponderance of the evidence supports the conclusion that Petitioner has satisfied the QAI requirements for a Table SIRVA.

### A. Petitioner Had No Prior Left Shoulder Condition or Injury that would Explain her Symptoms

The first requirement for a Table SIRVA is a lack of problems associated with the affected shoulder prior to vaccination that would explain the symptoms experienced after. 42 C.F.R. § 100.3(c)(10)(i). Respondent does not dispute that Petitioner meets this criterion. I find that she has demonstrated a lack of history of pain, inflammation, or dysfunction of her left shoulder that would explain her symptoms.

### B. Onset of Petitioner's Injury Occurred within Forty-Eight Hours of her Vaccination

The record preponderantly establishes onset of injury close-in-time to the November 30, 2021 vaccination. Petitioner first reported shoulder pain on December 18, 2021, noting left arm pain that began after receiving at least one covered vaccine. Ex. 4 at 560, 562. She also initially described her pain as "constant". *Id.* at 562. Further, she linked her shoulder pain to this same vaccination on multiple occasions. *See, e.g.*, Ex. 4 at 563 (record from December 18, 2021 wherein Dr. McKay noted Petitioner "had some type of injection complication such as vaccine being injected into the bursa"); Ex.

7 at 32-35 (record from May 8, 2024 reporting left shoulder pain after receiving vaccines "almost 2 years ago").

Respondent argues that Petitioner's reports of onset are vague approximations, and she thus relies solely on her affidavit for onset. Report at 4-5. But Program petitioners are not required to marshal records setting forth with chronographic specificity the precise day and hour that their onset manifested. As noted above, Petitioner reported pain after her vaccination and repeatedly linked her shoulder pain to the November 30, 2021, vaccine.

When the record is viewed in its entirety there is ample evidence to find proper onset began near in time to the vaccination. Accordingly, there is preponderant evidence that establishes the onset of Petitioner's left shoulder pain more likely than not occurred within 48-hours of vaccination.

### C. Petitioner's Pain was Limited to her Left Shoulder

The record also preponderantly establishes that Petitioner's pain was limited to her left shoulder.

Respondent argues that Petitioner experienced pain outside her shoulder. Report at 5. In particular, he observes that Petitioner reported pain in her neck and left chest, as well as radiating down her arm. *Id.* at 4. But Petitioner's records consistently report left shoulder pain. *See, e.g.*, Ex.4 at 654 (Petitioner reporting left shoulder pain and weakness). Petitioner's diagnostic procedures were also limited to her left shoulder, and she received treatment for left shoulder pain. *See*, *e.g.*, Ex. 4 at 655 (Petitioner's initial diagnoses included bursitis and signs of impingement); *id.* at 678 (physical therapy record from January 14, 2022 describing Petitioner's symptoms).

There are references to pain radiating down Petitioner's right arm and neck in some records, but those stray references to non-shoulder pain do not defeat a showing that Petitioner's treatment emphasis was shoulder-specific (although those complaints can also be disregarded in determining damages).

### D. There is No Evidence of Another Condition or Abnormality

The last criteria for a Table SIRVA state that there must be no other condition or abnormality which would explain a petitioner's current symptoms. 42 C.F.R. § 100.3(c)(10)(iv). Respondent does not contest this aspect of Petitioner's claim and there is nothing in the records to suggest otherwise.

### E. Other Requirements for Entitlement

In addition to establishing a Table injury, a petitioner must also provide preponderant evidence of the additional requirements of Section 11(c). Respondent does not dispute that Petitioner has satisfied these requirements in this case, and the overall record contains preponderant evidence to fulfill these additional requirements.

The record shows that Petitioner received a flu vaccine intramuscularly on November 30, 2021, in the United States. Ex. 1 at 4-5; *see* Section 11(c)(1)(A) (requiring receipt of a covered vaccine); Section 11(c)(1)(B)(i)(I) (requiring administration within the United States or its territories). There is no evidence that Petitioner has collected a civil award for her injury. Ex. 2 at 6; Section 11(c)(1)(E) (lack of prior civil award).

Based upon all of the above, Petitioner has established that she suffered a Table SIRVA. Additionally, she has satisfied all other requirements for compensation. I therefore find that Petitioner is entitled to compensation in this case.

2

## Conclusion

**In view of the evidence of record, I find that there is preponderant evidence that Petitioner satisfies the QAI requirements for a Table SIRVA. Further, based on the evidence of record, I find that Petitioner is entitled to compensation.**

**IT IS SO ORDERED.**

**s/Brian H. Corcoran**
**Brian H. Corcoran**
**Chief Special Master**